PEOPLE v. BURNSTEIN.

1. HOMICIDE—EVIDENCE—CRIMINAL LAW.
    In prosecution for homicide, rejection of testimony which defend-
    ants claim would have disclosed motive on part of others than
    defendants for committing crime charged was proper, in ab-
    sence of offer by defendants of any competent testimony tend-
    ing to establish in any definite person or group of persons
    motive for committing said crime.

2. CRIMINAL LAW—ADMISSIBILITY OF EVIDENCE AS TO MOTIVE IN
    ONE OTHER THAN ACCUSED.
    Orderly and unbiased judicial inquiry as to guilt or innocence
    of defendant on trial does not contemplate that such defend-
    ant should be permitted by way of defense to indulge in con-
    jectural inferences that some other person might have com-
    mitted offense for which he is on trial, or by fanciful analogy
    to say to jury that some one other than he is more probably
    guilty.

3. SAME—REMARKS BY PROSECUTOR.
    Statements by prosecutor in presence of jury should not be
    held prejudicial if made in good faith, and, when fairly con-
    strued, do not appear to have been such as influenced jury
    adversely to rights of accused.

4. SAME—PRESUMPTIONS OF INFERENCES BY JURORS.
    It is not to be presumed that jurors, in direct violation of their
    well-known duty, indulge in unjustifiable inferences.

5. SAME—REMARKS BY PROSECUTOR AND COURT—INFERENCES BY
    JURORS.
    Statement by prosecutor and remarks by court in presence of
    jury in refusing to grant defendants permission to reserve
    right of further cross-examination of people's witness, held,
    not prejudicial as warranting inference by jury that defend-
    ants were members of gang which would take vengeance on
    witness and thus prevent his reappearance in court.

As to reversal of conviction because of unfair or irrelevant argu-
ment or statements of fact by prosecuting attorney, see annotation in
46 L. R. A. 641, 648.
    On right of party calling to impeach hostile witness, see annotation
in 21 L. R. A. 423.
    As to cross-examination for purpose of showing bias or hostility
on part of witness, see annotation in 74 A. L. R. 1157.

6. Witnesses—Res Gestæ Witness.

Witness testifying that at about time of killing he saw automobile leaving place of crime, that he saw men in it, and that driver was not one of defendants, *held, res gestæ* witness under theory of people that defendants were then fleeing from scene of crime.

7. Same—Cross-Examination of Hostile Res Gestæ Witness—Discretion of Court.

It is within discretion of court to permit prosecutor to cross-examine hostile *res gestæ* witness for purpose of testing his credibility.

8. Criminal Law—Indorsement on Information During Trial—Witnesses.

Permitting prosecution to indorse on information during trial names of witnesses called to impeach hostile *res gestæ* witness and denying defendants' request for continuance, *held,* not error under circumstances.

9. Same—Requests to Charge—Instructions.

Refusal of requests to charge, in part argumentative and which were aimed at issues of fact rather than statement of law applicable to case, was not error, especially where charge as given fairly presented rights of defendants.

10. Same—Remarks by Prosecutor.

Improper remarks by prosecutor, made in reply to defense counsel, *held,* not reversible error, where stricken by court and jury cautioned to disregard them.

11. Same—New Trial—Statutes.

Circuit judge had power to order new trial in criminal case without limitation of time, on proper showing (3 Comp. Laws 1929, §§ 17355, 17356).

Appeal from Recorder's Court of Detroit; Van Zile (Donald), J. Submitted October 13, 1932. (Docket No. 202, Calendar No. 36,522.) Decided January 3, 1933.

Raymond Burnstein, Harry Keywell, and Irving Milberg were convicted of murder in the first degree. Affirmed, without prejudice to right to move for leave to file motion for new trial.

*Friedman, Meyers & Keys,* for appellants.

*Paul W. Voorhies,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *Miles N. Culehan* and *Edmund E. Shepherd,* Assistants Prosecuting Attorney, for the people.

North, J. Upon trial by jury, defendants were convicted of murder in the first degree. Life sentences were imposed and they have appealed. One reason assigned in support of the appeal is that defendants were not permitted to introduce testimony which they claim would have disclosed a motive on the part of others than the defendants for committing this crime. Appellants' brief presents this phase of the appeal as follows:

"The defendants were endeavoring to show that Sutker, Lebovitz and Paul (the murdered men) were the members of a gang that had a feud with a gang of which one William Butler was a member; that William Butler was killed and that these men had something to do with the killing of Butler and as a result thereof, were killed in turn."

In this connection appellants cite *Sawyers* v. *State,* 15 Lea (83 Tenn.), 694, where it is said:

"If there is proof in the possession of an accused tending to show that another had the motive, or was in condition to be acted upon by causes which might produce the motive to commit the offense, such facts may be shown as items of proof tending to establish a motive in the breast of such other person, and to that extent prove the existence of an hypothesis inconsistent with the guilt of the prisoner; the value of such evidence to be determined by the jury, who should give to it any such weight as its surroundings may justify."

Subject to certain limitations, we accept the legal proposition advanced by appellants; but a careful review of this record fails to disclose an offer by defendants of any competent testimony tending to establish in any definite person or group of persons a motive for committing this crime.

"An orderly and unbiased judicial inquiry as to the guilt or innocence of a defendant on trial does not contemplate that such defendant should be permitted by way of defense to indulge in conjectural inferences that some other person might have committed the offense for which he is on trial, or by fanciful analogy to say to the jury that some one other than he is more probably guilty." 8 R. C. L. p. 185.

The rulings of the circuit judge on this phase of the case were proper.

Appellants claim prejudicial error resulted from the following incident of the trial: On direct examination the people's witness McDonald identified one of the defendants as the driver of an automobile which left the scene of the murder shortly after the shooting occurred. Immediately after the shooting four other men entered this automobile. Following McDonald's direct examination defendants' counsel cross-examined him somewhat at length. Thereupon defendants' counsel requested permission to reserve the right of further cross-examination. An objection was interposed by the prosecuting attorney, and the following colloquy occurred:

*Prosecuting Attorney:* "This man is here pursuant to a subpœna and we have produced him in court. If it should happen that this witness could not come back, I don't want their side to be in a position to say that we have not had him available."

*Defendants' counsel:* "I think we are entitled to investigate him."

*Court:* "I don't want to be put in the position, if anything should happen to this man, that they cannot produce him. If he is available, we will have him back here, but I will not say that we are going to have him back here for cross-examination. You may finish your cross-examination at this time. He is here. * * * He might die of pneumonia, I don't know. * * * I am referring to all the hazards of life that we go through. I don't want to be put in a position where I have to grant a mistrial for some unforeseen circumstance happening."

Great care should be taken by prosecuting officers and trial courts that no statement be made in the presence of jurors which would jeopardize a defendant's right to a fair trial. But in the haste and heat of a trial it is humanly impossible to obtain absolute perfection, and of necessity some allowance must be made in determining whether impromptu remarks are to be held prejudicial. Statements should not be held prejudicial if they are made in good faith, and, when fairly construed, they do not appear to have been such as influenced the jury adversely to the rights of the accused. Appellants' contention relative to the above-quoted remarks is thus stated in their brief:

"The jury might well infer from the foregoing that the defendants were members of a gang which would take vengeance on the witness McDonald for the testimony he gave, and thus prevent his appearance in court when required."

It is not to be presumed that jurors, in direct violation of their well-known duty, indulge in unjustifiable inferences. Neither the statement of the

prosecuting attorney or of the court, when fairly construed, is reasonably susceptible of the meaning placed upon it by appellants. Especially is this true in the light of the clear statement of the court as to what he did refer to. At best appellants' contention in respect to this phase of the record is based upon an assumption or a possible construction of the record which is not sufficiently clear or definite to justify reversal.

Appellants complain of the trial court's ruling by which the prosecuting attorney was permitted to cross-examine Larry Pollock, one of the people's witnesses. This witness testified that about the time of the killing he saw a black automobile come out of the alley which extended past the rear of the apartment where the murder occurred; that it was going 30 or 35 miles per hour, and nearly collided with the Ford truck which the witness was driving. Pollock further testified he saw the men in the automobile and that he "got a very good look at the driver's face." But he also testified very positively that Burnstein was not the driver of this automobile. It developed that the witness had attended school with the defendant Burnstein. The prosecuting attorney claimed and subsequently offered testimony that Pollock had stated that he recognized defendants Burnstein and Keywell as occupants of the automobile that came out of the alley. Under the theory of the people that the defendants were then fleeing from the scene of the crime Pollock was a *res gestæ* witness. *People* v. *Blazenzitz,* 212 Mich. 675; *People* v. *Keywell,* 256 Mich. 139. The record justified the prosecutor in claiming Pollock was an unwilling or hostile witness; and in asserting the right of cross-examination. *People* v. *Elco,* 131

Mich. 519. In an abundance of precaution the trial court, while Pollock was on the witness stand, instructed the jury that the cross-examination was "solely for the purpose of testing his credibility," and that the "questions or the answers are not in any way substantive proof against the defendants." Again in the general charge the court called attention to this cross-examination and as to the testimony given by two witnesses called to impeach Pollock, saying that the jury might consider it as bearing upon the credibility of Pollock and "for that purpose alone."

Some of the questions propounded by the prosecuting attorney in cross-examining Pollock embodied assumptions which were unfavorable to the defendants; but such is often an unavoidable incident in cross-examining a hostile *res gestæ* witness. If unshaken, Pollock's testimony was very damaging to the people's case. The prosecution was compelled to produce him as a *res gestæ* witness. *Wellar* v. *People,* 30 Mich. 16. Under the circumstances, we think it must be held that the cross-examination, which was largely within the trial court's discretion, did not exceed the bounds of propriety.

It is asserted as a reason for reversal that prejudicial error was committed by the circuit judge in allowing the prosecution while the trial was in progress to indorse on the information the names of two witnesses who were called to impeach Pollock. If the prosecuting attorney was surprised by Pollock's unfavorable testimony there can be no question about the propriety of permitting indorsement of names of impeaching witnesses. But appellants assert that the prosecuting attorney knew before the trial that Pollock claimed he could not

identify any of the defendants as occupants of the automobile which he saw coming from the alley. We think indorsement of the two witnesses was a matter which called for the exercise of the trial court's discretion, in view of the prosecuting attorney's claim that notwithstanding he knew Pollock had made contradictory statements, he believed and had the right to assume that Pollock would tell the truth when under oath in the trial of the case. The prosecuting attorney could not know that Pollock would swear positively, as he did, that Burnstein was not the driver of the car. Touching the request of defendants' counsel for an adjournment of two weeks, it should be noted that after the prosecutor's application for the indorsement there was an adjournment from that day's session to the next, and several witnesses testified before the indorsed witnesses were called. These two witnesses were men who evidently had been on the Detroit police force for some time, one of them for 14 years. Their testimony was not in support of the people's main case.

"There must necessarily be some discretion allowed to the trial judge upon this subject, that the ends of justice may be subserved. It is to this end all rules must be made to conform, and all statutes construed, or the law would become a snare rather than a means of protection and safety." *People* v. *Durfee,* 62 Mich. 487, 492.

We think granting the application for indorsement and denying defendants' request for a two weeks' adjournment was not reversible error. *People* v. *Todaro,* 253 Mich. 367.

Other reasons assigned in support of the appeal have to do with the court's refusal to charge as

requested by appellants, alleged inflammatory and prejudicial remarks by the prosecutor, and the denial of defendants' motion for a new trial. The requests to charge, in part at least, are argumentative, and were aimed at issues of fact rather than a statement of the law applicable to the case. No complaint is made of the charge as given, which we think protected and fairly presented the rights of the defendants. As to the prejudicial remarks of the prosecutor, in passing upon the motion for the new trial the circuit judge said:

"The prosecutor's argument was in reply to defense counsel, and he was under great provocation. The remarks were justified."

The record sustains this assertion of the trial court. Improper statements made by the prosecutor were stricken by the court, and the jury cautioned to disregard them. Our review of this case, after carefully considering each of the foregoing reasons assigned in support of the appeal together with other reasons urged by appellants, discloses nothing which would justify reversal.

Nearly three months after the motion for a new trial was made and approximately two months after it was denied, defendants' counsel gave notice of "renewal of motion for new trial." One of the reasons assigned in support of the first motion for a new trial was newly-discovered evidence, but there was no showing whatever in support of this reason. The statutory period within which defendants had the right to move for a new trial had expired before the so-called "renewal motion" was filed. 3 Comp. Laws 1929, § 17356. It would have been proper practice for defendants by motion to have sought

leave of the court to move for a new trial. The circuit judge had power to order a new trial without limitation of time. 3 Comp. Laws 1929, § 17355; *People* v. *Hurwich,* 259 Mich. 361. The motion for leave would have been an appeal to the discretion of the court. In passing upon and denying defendants' "renewal of motion for new trial," the circuit judge seems to have been under the impression that he had "lost jurisdiction." Had it not been for this error, it is fair to presume that defendants' renewal motion might have been considered as an application for leave. In cases of this character, the matter of passing upon a motion for a new trial is peculiarly one over which the circuit judge should exercise primary jurisdiction. Further, in the instant case appellants assert in their brief that the full showing incident to their effort to secure a new trial is not embodied in this record.

The judgment of the circuit court is affirmed, but without prejudice to the right of appellants to make a motion in the trial court for leave to file a motion for a new trial on the ground of newly-discovered evidence.

McDONALD, C. J., and CLARK, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.